Patania LASKER, Respondent,

v.

Clinton JOHNSON, Appellant.

No. WD 61783.

Missouri Court of Appeals, Western District.

Nov. 12, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 23, 2003.

Application for Transfer Denied Jan. 27, 2004.

Richard Colbert, Kansas City, for appellant.

Patania Lasker, Kansas City, pro se.

PAUL M. SPINDEN, Judge.

The issue in this case is whether or not a parent can alter his future child support obligations without the circuit court's approval by entering into an agreement with the other parent. We conclude that he cannot and affirm the circuit court's judgment in part and reverse it in part.

Clinton Johnson raises this issue in his appeal of the circuit court's judgment ordering him to pay $63,780 in unpaid child support and modifying his child support obligation retroactively. Among Johnson's primary contentions is an assertion that the circuit court erred in not crediting him with the value of a house that, he claims, he transferred to Patania Lasker as payment of his future child support obligation.

Johnson was the father of a child born to Lasker. On August 28, 1992, when the child was 10 years old, the circuit court ordered Johnson to pay $500 per month in child support. Johnson complied with the order through October 1995. After that, Lasker was evicted from her residence. Johnson owned a house in Kansas City and allowed her to move into it with her children. Johnson claimed that he and Lasker agreed that he would give the house to her and their son in lieu of future child support payments. Lasker disagreed and claimed that Johnson gave the house to her because he did not want his son to be homeless. Johnson executed a warranty deed conveying the property to Lasker and their son, but it was not recorded until August 22, 1997, almost two years after Lasker and her children moved into the house.

After moving into the house, Lasker notified the Division of Child Support Enforcement that Johnson had quit paying child support. The division determined that his arrearage was $27,700. It issued an income withholding order on November 26, 1996, directing that $750 per month be withheld from his pay—$500 for the current support obligation and $250 for the arrearage. Apparently the division was not aware that Johnson had made payments through October 1995 directly to Lasker.

Johnson petitioned the circuit court for a writ of prohibition to stop the division's collection efforts. The division voluntarily terminated its income withholding order, but Johnson pursued his action. On August 14, 1997, the circuit court entered its judgment permanently prohibiting the division from enforcing its income withholding order. Johnson believed that this order established that he had no obligation for child support payments after October 1995.

On April 8, 1999, Lasker asked the circuit court to modify Johnson's child support payments. She contended that continuing circumstances had changed so substantially that Johnson's obligation of $500 each month was unreasonable. She alleged that Johnson was making more money, and she was making less. She averred that her and the child's living expenses had increased. Johnson responded by asking the circuit court for summary judgment on the ground that the requisite change of circumstances did not exist and that he had conveyed to Lasker a house worth $50,000 in lieu of his obligation for future support payments. The circuit court denied Johnson's motion because these matters presented genuine issues of fact.

Before a hearing on Lasker's motion to modify child support, Lasker obtained a writ permitting her to garnish money from Johnson's bank account. Johnson sought to quash the garnishment. Lasker's entitlement to garnish Johnson's funds depended on whether or not he had already satisfied his child support obligation by

giving her the house. The circuit court determined this matter and discovery disputes presented exceptional conditions that required it appoint a special master.

The master reported that the circuit court had previously determined that Johnson owed no arrearage and that his giving the house to Lasker was in lieu of future support payments. The master, however, questioned whether or not the circuit court's ruling was accurate and suggested that the circuit court decide the matter anew. She also suggested that, if the transfer was truly in lieu of future child support payments, the circuit court needed to determine the property's value so it could make a proper credit. The master heard evidence that the property was worth $48,500 during January 2001, but the master made no finding concerning its value then or at the time of transfer.

After two days of testimony and argument on the motion, the circuit court determined that Johnson's conveyance of the house to Lasker was a fraud on the court and that the deed did not transfer title. The circuit court rested its decision on Johnson's deeding the property as a single man when he was married, his deed's covenanting that the property was free of any encumbrances although it was mortgaged, his claiming it on his personal tax returns as rental property, and his occasional attempts to evict Lasker. Furthermore, the circuit court found that the parties were without authority to relieve Johnson from future child support payments in exchange for conveying the house to Lasker.

On August 9, 2002, the court entered judgment retroactively modifying Johnson's child support obligation. On the basis of four Form 14s prepared by the circuit court, it increased Johnson's support obligation to $991 per month for May 1999 through December 1999, $918 a month during 2000, and $914 a month during 2001 and later years. The circuit court concluded that Johnson's arrearage was $63,780 and ordered him to pay $1,414 per month—$914 for his current obligation as modified and $500 towards his arrearage. Johnson appeals.

In reviewing a child support modification proceeding, we consider whether or not substantial evidence supports the judgment, whether or not the judgment is against the weight of the evidence, or whether or not the judgment erroneously declares or applies the law. *Pelch v. Schupp*, 991 S.W.2d 729, 732 (Mo.App. 1999). Johnson makes four charges of error.

He first alleges that the circuit court erred in denying him credit for the house because the special master admitted evidence that the house's value was $48,500, and, because the circuit court did not adopt the special master's findings, it erred in not holding a hearing as required by Rule 68.01(g)(3). The point has no merit. The record does not support Johnson's contentions.

We surmise that Johnson is contending that his not being granted a $48,500 credit for the house established *per se* that the circuit court did not adopt the report and denied him a hearing on the issue. If he is, he is wrong. The special master made no finding concerning the house's value. Although the master heard testimony concerning the house's value, she declared that the circuit court would have to set the house's value.

Moreover, Johnson premises his contentions on beliefs that the circuit court had to give him credit for the house's fair market value because the circuit court had determined in the prohibition action that his transferring the house to Lasker satisfied his future child support obligations. The circuit court apparently adopted the

same interpretation of the judgment because it concluded that it had to set aside the conveyance as fraudulent to modify Johnson's child support obligations and to find that he had not paid past child support obligations.

The circuit court's earlier judgment in the prohibition action, however, did not approve of the transfer in lieu of Johnson's future support payments. It dealt only with the Division of Child Support Enforcement's income withholding order. The circuit court had ruled that the order was improper because the division had erroneously assumed that Johnson had not been making child support payments. The circuit court did not decide that Lasker was not entitled to future child support payments or that the division was prohibited from collecting those future payments. The only reference to the house in the circuit court's judgment was its statement that "[t]he application of [Johnson] for a writ of prohibition was duly served upon the Division of Child Support Enforcement ... with attachments showing all payment through the current date including [r]eal [e]state ... in lieu of future support payments." This merely was an acknowledgment of the document. It was not judicial approval of the transfer scheme.

 Johnson next argues that, because the issue before the circuit court was modification of child support, it exceeded its jurisdiction by setting aside his conveyance of the house to Lasker as a fraud on the court. He confusingly added an assertion to his point relied on that the court erred in not requiring Lasker to pay him rent for living in the house. Combining this argument in a single point with his contention that the circuit court exceeded its jurisdiction in setting aside the conveyance is confounding and inconsistent. His

argument, however, does not mention the rent issue. Claims of error presented without supporting argument preserve nothing for appellate review, and we deem them to be abandoned. *Papineau v. Baier,* 901 S.W.2d 190, 192 (Mo.App.1995). As for the remainder of his point, we agree that the conveyance's validity was not an issue that was properly before the circuit court. Not only did the circuit court misinterpret the 1997 judgment, but it also stepped beyond its proper role. *Taylor v. Taylor,* 47 S.W.3d 377 (Mo.App.2001).

In *Taylor,* we examined whether a circuit court, in considering a support modification motion, possessed subject matter jurisdiction to terminate parental rights. We held that it did not and that the circuit court's purported termination of those rights was void.

In § 452.370,[1] the General Assembly granted the circuit court power to modify maintenance and child support, not to set aside recorded real estate conveyances. Indeed, the extent of the circuit court's power is declared in the opening clause of § 452.370: "the provisions of any judgment respecting maintenance or support may be modified" upon the requisite change of circumstances. The circuit court, therefore, did not have jurisdiction to declare that the warranty deed was void.

 Notwithstanding the circuit court's error, however, Johnson was not entitled to a credit against his child support obligation. Judicial approval is a requisite to a parent's altering a judicially-ordered child support plan, and any altering of a plan without judicial approval is unenforceable. *Mora v. Mora,* 861 S.W.2d 226, 228 (Mo.App.1993). Because the circuit court did not approve Johnson's and Lasker's alleged agreement regarding

---

**1.** All citations to statutes refer to the 2000 Revised Statutes.

transfer of the house in lieu of Johnson's paying future child support, the transfer, assuming it occurred, could not have relieved Johnson of his child support obligations.

Johnson does not present any other ground entitling him to a credit. The circuit court, therefore, did not err in denying him the credit.

Johnson next asserts that the circuit court erred in calculating the Form 14 presumed child support payment. Johnson's point asserts that the circuit court erred in calculating the Form 14 presumed child support payment, but he does not develop that contention in the argument portion of his brief. He, therefore, did not preserve the issue for our review. *Trustees of Green Trails Estates Subdivision v. Marble*, 80 S.W.3d 841, 848 (Mo.App.2002).

What he argues instead is that the circuit court erred in concluding that continuing circumstances had changed so substantially as to make the terms of his current support obligation unreasonable. He also avers that the court should have considered factors outside the parties' respective incomes in determining his child support obligation.

When the circuit court has determined that the moving party has satisfied the requisite standard to modify child support under § 452.370, it must determine the amount of the support in accord with Rule 88.01 and § 452.340. *Ponce v. Ponce*, 102 S.W.3d 56, 60 (Mo.App.2003). This is a two-step process. First, the circuit court must determine on the record the presumed child support using Form 14. The calculated figure is presumptively correct. But, second, the circuit court must determine whether or not to order the calculated amount. In this step, the circuit court may rebut the presumed correct child-support as unjust or inappropriate after considering all relevant factors. Rule 88.01;

§ 452.340.9; *Ponce*, 102 S.W.3d at 60. These factors include, but are not limited to, those listed in § 452.340.1. *Crews v. Crews*, 949 S.W.2d 659, 669 (Mo.App.1997).

In Johnson's case, the circuit court rejected the parties' calculations when it calculated its own Form 14s and made them a part of its judgment. *Clark v. Clark*, 101 S.W.3d 323, 328 (Mo.App.2003). The circuit court is free to reject the parties' Form 14s if it deems them incorrect and to complete its own calculations for the record. *Woolridge v. Woolridge*, 915 S.W.2d 372, 380–81 (Mo.App.1996).

The circuit court completed four Form 14s, each covering a different year. Johnson contends, without support, that the circuit court can make only one modification in a proceeding. He is wrong. When the circuit court determines that modification of child support is appropriate under § 452.370, its making more than one modification during the pertinent period is not inappropriate. *See Schaffer v. Haynes*, 847 S.W.2d 814, 819 (Mo.App.1992).

After making its calculations, the circuit court determined that "[t]he presumed support [was] not rebutted as unjust or inappropriate." Johnson does not argue that the circuit court erred in calculating its Form 14s but that it did not consider all the factors that it should have in deciding whether the presumptive amount was proper. Had it done so, he asserts, it could have found only that the presumed child support amount was unjust or inappropriate.

Johnson's point relied on, however, did not assert any of this. Nor did it assert that the court erred in finding that the requisite standard to modify had been satisfied. It asserted only that the circuit court erred in its Form 14 calculation, so he did not preserve his contentions for our

review. Our review is limited to the issues raised in the point relied on. *Rea v. Moore*, 74 S.W.3d 795, 799 (Mo.App.2002).

■ Johnson finally argues that the circuit court erred because it did not indicate adequately on the record how it calculated an arrearage of $63,780. His point relied on does not raise the issue, and we would decline review on that ground but for its constituting plain error. Rule 84.13(c) allows us to consider "[p]lain errors affecting substantial rights ... when [we find] that manifest injustice or miscarriage of justice has resulted" from the plain error.

Rule 84.13(c) is a bit of a conundrum. It grants us authority to review plain error, but only if we find manifest injustice or a miscarriage of justice. Making a finding of manifest injustice or a miscarriage of justice seems tantamount to review. The Supreme Court has clarified that it intended for the rule to mean that we should first examine plain error "facially" and review the matter only if we discern a substantial ground for believing that manifest injustice or miscarriage of justice has resulted from plain error. *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc), *cert. denied*, 516 U.S. 1031, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995). Applying that paradigm to this case, Johnson's argument merits our review as plain error.

From the face of the circuit court' s judgment, we discern that, at $63,780, the circuit court set Johnson's arrearage too high. It is far more than the sum of Johnson's monthly child support obligations. The record is not clear how the circuit court derived the arrearage. Although it set out various figures in its

judgment, we cannot decipher its calculation. Of greater concern is that, if it was in the manner that we surmise, the circuit court miscalculated the arrearage to Johnson's detriment.

The circuit court's judgment ordered that Johnson's child support be retroactively modified to $991 per month from May 20, 1999, through December 20, 1999; $918 per month from January 20, 2000, through December 20, 2000; and $914 per month from January 20, 2001, through July 20, 2002. His combined arrearage for the 39 months totaled $36,310.[2] Earlier in its judgment, the circuit court indicated that Johnson owed an arrearage of $27,470 for January 1, 1996, through July 14, 2000,[3] based on his support obligation of $500 per month under the court's original order. The arrearage of $27,470 covered a period ending in July 2000. The court, however, appears to have doubly charged Johnson for a portion of that period. In addition to the $500 per month that it charged him with owing, it began charging him in May 1999 with retroactively modified child support at a higher amount. This means that, for the period of May 1999 through December 1999, the circuit court was charging Johnson with a monthly obligation of $1,491 ($500 plus $991), and for the period of January 2000 through July 2000, a monthly obligation of $1,418 ($500 plus $918). This obviously resulted in a total arrearage substantially higher than that which Johnson owes. We, therefore, reverse the circuit court's judgment in this regard.

We affirm the circuit court's judgment in its retroactive modifications of child

---

**2.** The circuit court's judgment indicates that the arrearage for January 20, 2001, through July 20, 2002, was $6,398. That would be correct but for the period's being 19 months and not seven.

**3.** We are uncertain why the circuit court started calculating the arrearage in January 1996. The record reflects that the last child support payment Lasker received was two months earlier, during October 1995.

support. We reverse and remand those portions of the circuit court's judgment that declare the recorded deed to be of no effect and that calculate the arrearage. On remand, the circuit court shall recalculate Johnson's arrearage for a period commencing in November 1995, the month following the last child support payment provided Lasker. The circuit court shall remove any reference purporting to set aside the real estate conveyance and declaring the recorded deed to be of no effect.

THOMAS H. NEWTON, Presiding Judge, and PATRICIA A. BRECKENRIDGE, Judge, concur.